IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

TAJUDIN JARALLAH

:

v.                          :   Civil Action No. DKC 14-1772

:

WARREN THOMPSON, et al.

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are the following motions: (1) a motion to dismiss or, alternatively, for summary judgment filed by Defendants Warren Thompson, Maurice Jenoure, and Dina Zaikouk (ECF No. 12); (2) a motion to dismiss or, alternatively, for summary judgment filed by Defendant Dan Kelly (ECF No. 26); (3) a motion to amend the complaint filed by Plaintiff Tajudin Jarallah (ECF No. 32); (4) motions to dismiss filed by Defendants Bowie State University ("Bowie State") (ECF No. 4), Morgan State University ("Morgan State") (ECF No. 5), and Prince George's Community College ("PGCC") (ECF No. 16) (collectively the "school Defendants"); (5) a motion to dismiss voluntarily without prejudice filed by Plaintiff (ECF No. 24); and (6) a motion to disqualify counsel filed by Plaintiff (ECF No. 25). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the

following reasons, the motions of Defendants Thompson, Jenoure, Zaikouk, and Kelly to dismiss or alternatively, for summary judgment will be granted.  Plaintiff's motion for leave to amend will be denied.  School Defendants' motions to dismiss will be granted.  Plaintiff's motion to dismiss voluntarily without prejudice will be denied.  Plaintiff's motion to disqualify counsel will be denied.

I.   **Background**

   A.   **Factual Background**

Plaintiff worked in various capacities for Thompson Hospitality Corporation ("Thompson Hospitality").  Thompson Hospitality is a food services provider that contracts with colleges and universities to provide cafeteria and other food services.  Plaintiff began working for Thompson Hospitality in early 2011.  Plaintiff initially worked as an Executive Chef for Thompson Hospitality at Bowie State.  While at Bowie State, Plaintiff raised multiple concerns to Thompson Hospitality management regarding alleged discrimination by his supervisors. (ECF No. 1-4, at 1-33).  Thompson Hospitality management investigated Plaintiff's allegations and found them to be without merit.  (ECF No. 1-4, at 32).

In August 2011, Plaintiff emailed Thompson Hospitality a request for a transfer to a location in the South because he found the rent in Maryland too high and maintained a home in

Atlanta, Georgia.  (ECF No. 1-4, at 46-47).  In December 2012, Plaintiff was transferred within Thompson Hospitality, and began working as a Food Service Director at Paine College in Augusta, Georgia.  (ECF No. 13-1, at 1).   In January 2013, Thompson Hospitality lost its contract with Paine College.  Plaintiff was offered to transfer again within Thompson Hospitality, but chose to stay at Paine College.  (I*d*.).  The record indicates that, as of at least May 9, 2014, Plaintiff has remained employed by ABL Educational Enterprise, Thompson Hospitality's replacement, at Paine College as a Food Service Director.  (ECF No. 1-5, at 1).

### B.   Procedural Background

Shortly after his departure from Thompson Hospitality, Plaintiff filed three complaints with the Equal Employment Opportunity Commission ("EEOC").   In his EEO complaints, Plaintiff alleged that he was discriminated against based on race, color, sex, religion, national origin, age, and disability, and was also retaliated against based on an earlier EEO complaint.  (ECF No. 13-1, at 5-15).  Plaintiff and Thompson Hospitality communicated extensively throughout the spring and summer of 2013 regarding settling the EEO complaints.  (ECF Nos. 31-4 and 31-6).  Plaintiff and Thompson Hospitality exchanged multiple draft settlement proposals.

On August 12, 2013, Plaintiff attended an EEOC mediation session with representatives from Thompson Hospitality.  (ECF

3

No. 13-2, at 1-2). According to Plaintiff, during the EEOC mediation session, he "stood up to walk out of the negotiation and promised to continue to sue the Defendants for the next 'hundred years.'" (ECF No. 31, at 7). The parties continued to negotiate, however, and ultimately signed a Separation Agreement and Release ("Release"). (ECF No. 13-3, at 2-8). In the Release, Plaintiff agreed to "waive, release, and forever resolve all claims, demands, or causes of action arising out of, relating to, or touching or concerning Thompson [Hospitality]." (*Id.* at 3). In exchange for this release, Thompson Hospitality paid, what Plaintiff contends amounts to, roughly the equivalent of one year of his salary.[1]

The record indicates that the EEOC closed at least one of Plaintiff's EEO complaints against Bowie State on May 16, 2014 because "[t]here [was] no employee/employer relationship." (ECF No. 1-3). The record does not indicate the disposition or current status of the other EEO complaints against Bowie State or the other school Defendants.

Plaintiff, proceeding *pro se*, commenced this suit on June 3, 2014. (ECF No. 1). Plaintiff alleges discrimination based on race, color, nationality, religion, and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") while

---

[1] The specific amount paid under the Release was redacted from the record.

4

employed by Thompson Hospitality at Bowie State.   Plaintiff also alleges numerous other claims, but provides nothing more than conclusory allegations and buzzwords without adequate facts to support his allegations.[2]

On September 24, 2014, Bowie State and Morgan State filed separate motions to dismiss.  (ECF Nos. 4 and 5).   On October 21, 2014, PGCC also moved to dismiss.  (ECF No. 16).   Plaintiff filed oppositions to each motion.  (ECF Nos. 18, 19, and 24). Plaintiff also moved to dismiss his complaint voluntarily in order to bring his complaint in state court.  (ECF No. 24).

On October 20, 2014, Defendants Thompson, Jenoure, and Zaikouk filed a motion to dismiss or, in the alternative, for summary judgment.  (ECF No. 12).   Defendant Kelly moved to dismiss or, in the alternative, for summary judgment on November 14, 2014.[3]  (ECF No. 26).   Plaintiff filed an opposition, (ECF No. 31), and Defendants Thompson, Jenoure, Zaikouk, and Kelly (collectively "individual Defendants") replied (ECF No. 35).

---

[2]   Among  Plaintiff's  other  allegations  are:  defamation, breach of contract, invasion of privacy, intentional infliction of emotional distress, violations of 42 U.S.C. §§ 1981 and 1983, violations  of  Title  VI  and  Title  IX,  violations  of  the  Age Discrimination  in  Employment  Act,  and  a  violation  of  the Sarbenes-Oxley Act of 2002.

[3]  Defendant Kelly filed his motion to dismiss or, in the alternative,  for  summary  judgment  separately  because  he  was served  after  the  other  Defendants.  The  motions  are  identical, and he joined the reply.

On November 13, 2014, Plaintiff filed a motion to disqualify individual Defendants' attorney. (ECF No. 25). The individual Defendants filed an opposition. (ECF No. 33). Plaintiff filed a supplemental motion. (ECF No. 34).

Finally, on November 24, 2014, Plaintiff filed a motion for leave to amend his complaint to add additional defendants. (ECF No. 32). Individual Defendants filed opposition, (ECF No. 37), and Plaintiff replied (ECF Nos. 40 and 41).

## II. Individual Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment

### A. Standard of Review

The individual Defendants have moved to dismiss or, in the alternative, for summary judgment. Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion to dismiss. *See Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until

6

the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). It is appropriate to consider the extraneous materials submitted by Defendants, and Plaintiff had notice by virtue of the motion filed by Defendants. *See Warner v. Quilo*, No. ELH-12-248, 2012 WL 3065358, at *2 (D.Md. July 26, 2012) ("When the movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur[.]") (quoting *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998)). Accordingly, Defendants' motion will be treated as one for summary judgment.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

**B. Analysis**

Individual Defendants argue that the Release signed by Plaintiff precludes the discrimination claims brought against them as employees and agents of Thompson Hospitality. (ECF No. 13, at 9). Plaintiff counters that the Release does not cover Defendants as individuals, or, alternatively, that Thompson Hospitality fraudulently represented the scope of the Release. (ECF No. 31, at 8).

It is undisputed that Plaintiff signed the Release on August 13, 2013 following an EEOC mediation session. (ECF No. 13-3, at 2-6). Such cooperative EEOC settlements are the "preferred means for eliminating unlawful discrimination." *Bala v. Virginia Dep't of Conservation and Recreation*, No. 14-1362, 2015 WL 3895468, at *3 (4th Cir. June 25, 2015) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974)). An employee can waive potential discrimination claims "provided the waiver is knowing, voluntary, and part of a bargain that resolves the underlying employment discrimination dispute." *Id.* Title 29 C.F.R. § 1614.504(a) provides: "Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties."

Federal courts have held that settlement agreements are contracts between the parties, subject to the rules of contract

interpretation. *See, e.g.*, *Rock v. McHugh*, 819 F.Supp.2d 456, 466 (D.Md. 2011) (citations omitted). The Release states that it "shall be construed and governed in accordance with the laws of the State of Maryland." (ECF No. 13-3, at 6). Maryland contract law applies the objective theory of contract interpretation. *See, e.g.*, *Rock*, 819 F.Supp.2d at 467; *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 86–87 (2010).

Under the objective theory of contract interpretation, unambiguous contract terms are given their plain meaning, regardless of the parties' intentions at the time the contract was formed. *See Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008). The interpretation of a written contract is ordinarily a question of law for the court. *Suburban Hosp. v. Dwiggins*, 324 Md. 294, 306 (1991). Therefore, when interpreting a contract, the court's task is to "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Calomiris v. Woods*, 353 Md. 425, 436, (quoting *Gen. Motors Acceptance v. Daniels*, 303 Md. 254, 261 (1985)). "The true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id*. In its interpretation, the court must look to the entire language of the agreement, not merely a

portion thereof, *Jones v. Hubbard*, 356 Md. 513, 534–35 (1999), but parol evidence of the parties' intent or meaning should not be considered unless there is an ambiguity. *See Beale v. Am. Nat'l Lawyers Ins. Reciprocal*, 379 Md. 643, 660 (2004); *Bushey v. N. Assurance*, 362 Md. 626, 632 (2001); *see also Higgins v. Barnes*, 310 Md. 532, 537 (1987) ("[E]vidence is inadmissible to vary, alter, or contradict a contract that is complete and unambiguous.").

The plain meaning of the Release's terms bar Plaintiff's claims against Defendants acting within their capacity as employees and agents of Thompson Hospitality. Plaintiff attempts to bring discrimination claims against Defendants in their individual capacities, possibly to maneuver around the terms of the Release, but this attempt is futile. The United States Court of Appeals for the Fourth Circuit has held that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. Southern Food Service Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Because of this, even absent a valid Release, Plaintiff could not bring his discrimination claims against the individual Defendants. Plaintiff's only potential claim of discrimination based on the alleged conduct of Thompson Hospitality employees is against Thompson Hospitality itself, a claim that is precluded by the Release. *See, e.g., Erskine v. Board of Education*, 197 F.Supp.2d 399, 405

11

(D.Md. 2002) (dismissing Title VII claims against public educators and only leaving claim against Board of Education itself).

Plaintiff alleges that Thompson Hospitality fraudulently induced him to sign the Release, and that he "was misled as to the true intention and terms" of the Release. (ECF No. 31, at 2). Plaintiff contends that he was intentionally misled to believe that he would still be able to bring claims against Thompson Hospitality's employees. Individual Defendants assert that there is no indication in the record that individual Defendants or Thompson Hospitality made any fraudulent representations or omissions. (ECF No. 35, at 3).

Plaintiff has not shown any indication of fraud committed by Thompson Hospitality or individual Defendants. Plaintiff provided numerous settlement-related e-mails between himself and Thompson Hospitality representatives, (ECF Nos. 31-2, 31-4, and 31-6), but none of the communications indicates any fraudulent effort on behalf of Thompson Hospitality or individual Defendants. On the contrary, the communications show an extensive negotiation on settlement terms between Plaintiff and Thompson Hospitality that ultimately concluded with the Release. Thompson Hospitality sent an initial draft of a settlement agreement that Plaintiff rejected. (ECF No. 35-1, at 4). Plaintiff countered with an agreement of his own that ended up

being the basis of the final Release. (*Id.*) Plaintiff's negotiations led to an increase in the final settlement amount.

Nothing in the record undermines the conclusion that the Release was a bargained-for agreement foreclosing Plaintiff's ability to bring all claims relating to his employment at Thompson Hospitality. Plaintiff, in the final Release, voluntarily waived his right to bring "all claims, demands, or causes of action arising out of, relating to, or touching or concerning Thompson [Hospitality]." (ECF No. 13-3, at 3). The Release enumerates fourteen categories of claims that Plaintiff is barred from bringing against individual Defendants, including:

> [A]ll claims, demands, or causes of action arising under . . . the Civil Rights Act of 1964, as amended; . . . the Civil Rights Act of 1866 (42 U.S.C. § 1981 and § 1981a); . . . the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; . . . the United States Constitution . . . defamation, promissory estoppel, breach of fiduciary duty, fraud, negligence, tortuous interference[.]"

(ECF No. 13-3, at 3-4). The Release also includes clear language expressly affirming that Plaintiff "carefully read and fully understands[,] . . . knowingly and voluntarily agrees to[,] . . . [and] knowingly and voluntarily intends to be legally bound by" the terms of the Release. (ECF No. 13-3, at 7). Plaintiff expressly "recognize[d] that he has the right to

consult with an attorney of his choice prior to executing" the Release.  (*Id.*).

Notably, Plaintiff has experience executing similar settlement agreements.  In 2009, Plaintiff challenged a settlement agreement of a discrimination claim, alleging it was the product of duress.  The United States Court of Appeals for the Fifth Circuit affirmed the district court's dismissal of his claim as being barred by the agreement.  *See Jarallah v. Sodexo, Inc.*, 452 Fed.App'x 465 (5th Cir. 2011).  The Fifth Circuit noted that Plaintiff had "competently litigated several cases pro se and adeptly negotiated this clear and plain settlement agreement himself over a lengthy period of time."  *Id.* at 468.  In that case, the Fifth Circuit held that Plaintiff "simply made no showing that his agreement was reached by duress."  *Id.*

Here, Plaintiff also has simply made no showing that the Release was procured by fraud.  "Having obtained the benefit of his bargain, [Plaintiff] cannot now seek a remedy from the courts after knowingly and voluntarily relinquishing the underlying claims."  *Bala*, 2015 WL 3895468, at *1; *see also Randolph v. Caruso Homes, Inc.*, No. RWT-13-2069, 2014 WL 4661985, at *5 (D.Md. Sept. 16, 2014) ("By signing the Release, failing to revoke it, and accepting payment under it, she chose to forego the uncertainty and expense of a lawsuit in favor of the certainty of a severance payment.").  Neither Thompson

14

Hospitality nor individual Defendants made any representations indicating that the Release would not bar actions brought against Thompson Hospitality employees.   For the foregoing reasons, the motion of Defendants Thompson, Jenoure, and Zaikouk to dismiss or, alternatively, for summary judgment, will be granted.   Defendant Kelly's motion to dismiss or, alternatively, for summary judgment will also be granted.

## III. Plaintiff's Motion to Amend

### A.   Standard of Review

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave.   The court should freely give leave when justice so requires."   Denial of leave to amend should occur "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."   *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

The standard for futility is the same as a motion to dismiss under Rule 12(b)(6).   *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (affirming district court's denial of a motion to amend because "proposed amended complaint does not properly state a claim under Rule 12(b)(6) and lacks sufficient particularity under Rule 9(b)"); *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)

15

(holding that an amendment is futile if the amended claim would fail to survive a motion to dismiss).  "Leave to amend should be denied on the ground of futility only when the proposed amendment is clearly insufficient or frivolous on its face." *Cappetta v. GC Servs. Ltd. P'ship*, No. 3:08CV288, 2009 WL 482474, at *4 (E.D.Va. Feb. 24, 2009) (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980); *Oroweat Foods Co.*, 785 F.2d at 510)).

   **B.   Analysis**

   Plaintiff requests leave to amend his complaint to add as additional Defendants: Thompson Hospitality; Compass Group, USA, Inc.; Tomas P. Dowd; and Littler Mendelson, P.C.  (ECF No. 32). Plaintiff seeks to assert fraud claims against the proposed additional defendants and bring discrimination claims against Thompson Hospitality.

   Plaintiff's amended complaint alleging fraud is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999); *Dwoskin v. Bank of America, N.A.*, 850 F.Supp.2d 557, 569 (D.Md. 2012).  Rule 9(b) provides that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Such

16

allegations typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (quoting *Windsor Associates, Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)). The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation. *See Harrison*, 176 F.3d at 784.

Plaintiff's proposed amended complaint (ECF No. 32-1) does not meet Rule 9(b)'s heightened standard. Plaintiff makes no particularized showing of fraud, and, in fact, provides no factual assertions supporting his fraud allegations. Absent such a showing of fraud, the Release bars Plaintiff's potential discrimination claims against Thompson Hospitality for the reasons explained above. Because Plaintiff has made no showing of fraud, and, absent such a showing, cannot bring discrimination claims against Thompson Hospitality, Plaintiff's request for leave to amend is futile. For the foregoing reasons, Plaintiff's request for leave to amend will be denied.

**IV. School Defendants' Motions to Dismiss**

    **A.   Standard of Review**

School Defendants have moved to dismiss.  The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).   A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See Harrison,* 176 F.3d at 783 (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, unsupported legal allegations need not be accepted.  *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Iqbal,* 556 U.S.

at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

Finally, while courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," they may nevertheless dismiss complaints that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Turner v. Kight,* 192 F.Supp.2d 391, 398 (D.Md. 2002).

### B.   Analysis

In order for Plaintiff's Title VII claim to survive school Defendants' motions to dismiss, he must first allege that the schools were his "employer" for Title VII purposes. Plaintiff was an employee of Thompson Hospitality when the alleged discriminatory conduct occurred. Plaintiff admits Thompson Hospitality was his employer, but alleges that Bowie State, Morgan State, and PGCC were his "co-employer[s]." (ECF No. 1 ¶ 96).

Due to the ambiguity of the term "employer" under the Act, courts have fashioned a variety of tests by which a defendant who does not directly employ the plaintiff may still be the plaintiff's "employer" under Title VII. *See Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999), *abrogated on other*

*grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006).  One such test, the "integrated-employer test," seeks to determine whether two separate entities can be considered a "single employer" for Title VII purposes.  *See id.; Tasciyan v. Med. Numerics*, 820 F.Supp.2d 664, 671-72 (D.Md. 2011); *Watson v. CSA, Ltd.*, 376 F.Supp.2d 588, 594 (D.Md. 2005).  Under this test, the court may find that separate companies are "so interrelated that they constitute a single employer." *Hukill*, 192 F.3d at 442.  It appears Plaintiff, by using the term "co-employer," is alleging that Thompson Hospitality and the schools were integrated employers.

The integrated-employer test involves four elements: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control."  *Id.; see also Romano v. U-Haul Int'l*, 233 F.3d 655, 665 (1st Cir. 2000) (recognizing that the majority of courts have applied the "integrated-enterprise test" when determining whether a single employer exists under Title VII); *Laurin v. Pokoik*, No. 02 CIV. 1938 (LMM), 2004 WL 513999, at *4 (S.D.N.Y. Mar. 15, 2004) (acknowledging that courts have applied the four factors to Title VII claims). While "control of labor operations is the most critical factor," courts have acknowledged that "no single factor is conclusive." *Hukill*, 192 F.3d at 442; *see also Armbruster v. Quinn*, 711 F.2d 1332, 1338

(6th Cir. 1983), *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) ("All four criteria need not be present in all cases."); *Laurin*, 2004 WL 513999, at *4 ("No one factor is controlling, and not every factor is required.").

As to Morgan State and PGCC, Plaintiff alleges no facts, beyond short conclusory statements, suggesting either school was his employer or was an integrated employer with Thompson Hospitality. Plaintiff never worked for Thompson Hospitality at either Morgan State or PGCC, and Plaintiff does not allege any facts suggesting an integrated employer relationship between Thompson Hospitality and either school. Because of the complete lack of facts alleged with regards to Morgan State and PGCC, Morgan State and PGCC's motions to dismiss will be granted.

Plaintiff alleges slightly more regarding Bowie State, requiring further analysis. The alleged discriminatory actions taken by Thompson Hospitality employees were done while Plaintiff was working for Thompson Hospitality at Bowie State. Plaintiff alleges that Bowie State had the right to control certain hiring and termination decisions. Bowie State counters that Plaintiff was solely an employee of Thompson Hospitality. Bowie State asserts it had no control over Plaintiff or other Thompson Hospitality employees and there was no interrelation, common management, or centralized control between the two entities.

Plaintiff has not alleged any facts supporting his conclusory claim that Bowie State was an integrated employer with Thompson Hospitality.   Nothing in the complaint plausibly states that Bowie State and Thompson Hospitality had any degree of common management, interrelation between operations, centralized control of labor relations, or any common ownership or financial control.   Plaintiff's brief conclusory statement that Bowie State had the right to dictate who to hire and terminate is undermined by his other allegations against Thompson Hospitality employees and by documents attached to, and referenced in, the complaint.   Thompson Hospitality, not Bowie State, retained all supervisory responsibilities over Plaintiff and other Thompson Hospitality employees, including hiring (ECF No. 1-9, at 1), transferring (ECF No. 1-4, at 46-47), and day-to-day operations (ECF No. 50).[4]   Plaintiff's conclusory allegations do not plausibly allege that Thompson Hospitality and Bowie State were integrated employers.

---

[4] A complaint alleging a defendant is an integrated employer often survives a motion to dismiss, but, in those cases, plaintiffs pleaded significantly more facts alleging the integrated nature of the entities than Plaintiff has here. *See, e.g.*, *Gilbert v. Freshbikes, LLC*, 32 F.Supp.3d 594, 603 (D.Md. 2014) (denying motion to dismiss because plaintiff pleaded substantial facts alleging common management, common control of labor relations, and common ownership); *Watson v. CSA, Ltd.*, 376 F.Supp.2d 588, 593-99 (D.Md. 2005) (denying motion to dismiss because plaintiff pleaded facts showing significantly interrelated operations, control of labor relations, and financial control).

Plaintiff's only opposition to school Defendants' motions to dismiss is a motion to dismiss his complaint voluntarily without prejudice in order to bring the discrimination claims against school Defendants in Maryland state court. (ECF Nos. 18, 19, and 24). The decision to grant or deny a motion for voluntary dismissal under Rule 41(a)(2) "is a matter for the discretion of the district court, and its order will ordinarily not be reversed except for an abuse of discretion." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). The factors that should guide a district court in deciding a motion under Rule 41(a)(2) include "the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, insufficient explanation of the need for a voluntary dismissal, and the present stage of litigation." *Miller v. Terramite Corp.*, 114 F.App'x. 536, 540 (4th Cir. 2004) (quoting *Phillips USA, Inc., v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996)). The Fourth Circuit has noted that, when assessing motions to dismiss voluntarily under Rule 41(a)(2), district courts should "focus primarily on the interests of defendants," but also consider other factors the court deems proper, including "preventing plaintiffs from litigating, losing, and then wiping the slate clean by voluntary dismissal." *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 177 (4th Cir. 2007).

Plaintiff, as discussed earlier, has made no factual allegations supporting his discrimination claims against the school Defendants.  Plaintiff has given insufficient reasons why voluntary dismissal is required.  Voluntarily dismissing Plaintiff's claims against the school Defendants to allow him to bring them in state court would not cure the fundamental deficiency that there was no employee-employer relationship between Plaintiff and the school Defendants.  It is clear that Thompson Hospitality, not the school Defendants, is the appropriate defendant, if any, for Plaintiff's claims.[5]  For the foregoing reasons, Bowie State's motion to dismiss will be granted.  Morgan State's motion to dismiss will be granted.  PGCC's motion to dismiss will be granted.  Plaintiff's motion to dismiss voluntarily without prejudice will be denied.

## V.    Plaintiff's Motion to Disqualify Counsel

### A.    Standard of Review

As explained in *Penn Mutual Life Ins. Co. v. Berck*, No. DKC 09-0578, 2010 WL 3294309, at *3 (D.Md. Aug. 20, 2010):

> A motion to disqualify is a serious matter, which must be decided on a case-by-case basis.  This is so because two significant interests are implicated by a disqualification motion: the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community.  Nevertheless, the

---

[5] As discussed earlier, the Release bars Plaintiff from bringing his claims against Thompson Hospitality.

> guiding principle in considering a motion to
> disqualify counsel is safeguarding the
> integrity of the court proceedings. Thus,
> this court must not weigh the competing
> issues with hair-splitting nicety but, in
> the proper exercise of its supervisory power
> over the members of the bar and with a view
> of preventing an appearance of impropriety,
> [this Court] is to resolve all doubts in
> favor of disqualification.

*Berck*, 2010 WL 3294309, at *3 (quoting *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 750 (D.Md. 1997)) (citations and internal quotation marks omitted). Because disqualification necessarily results in the drastic result of a party losing its freely chosen counsel, the movant "bear[s] 'a high standard of proof to show that disqualification is warranted.'" *Franklin v. Clark*, 454 F.Supp.2d 356, 364 (D.Md. 2006) (quoting *Buckley*, 908 F.Supp. at 304); see also *Aetna Cas. & Surety Co. v. United States*, 570 F.2d 1197, 1200-01 (4th Cir. 1978) (requiring that the district court find that there is an "actual conflict," and not just a speculative conflict, before disqualifying counsel). Accordingly, the movant has the burden of proof as to all facts necessary to show the rule of professional conduct that requires the attorney's disqualification. *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Perlberg*, 819 F.Supp.2d 449, 454-55 (D.Md. 2011) (finding, after reviewing movant's evidence in support of its motion to disqualify under Rule 1.9, that the movant "has not satisfied the high burden of proof necessary to sustain a

25

disqualification motion in showing it stood in an attorney-client relationship" with opposing counsel); *see also Victors v. Kronmiller*, 553 F.Supp.2d 533, 552-53 (D.Md. 2008) (denying movant's motion for disqualification because the movant failed conclusively to establish a conflict under Rule 1.9); *cf. City of Cleveland v. Cleveland Elec. Illuminating Co.*, 440 F.Supp. 193, 207 (N.D.Ohio 1976) (describing the moving party's burden as being "imposed by several interrelated evidentiary hurdles" provided by the operative rule of professional conduct).

**B.   Analysis**

The Maryland Rules of Professional Conduct ("MRPC"), which have been adopted by the Court of Appeals of Maryland, apply to disputes involving attorney conduct.   Local Rule 704.   Plaintiff argues that Thomas P. Dowd should be disqualified from representing individual Defendants because the representation violates Rule 3.7(a) of the MRPC.[6]   Rule 3.7(a) states that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or

---

[6] Plaintiff also argues Mr. Dowd's disqualification should be imputed to his firm.   It is not necessary to reach this question because the court finds Mr. Dowd is not disqualified under the MRPC.

(3) disqualification of the lawyer would work substantial hardship on the client." MRPC 3.7(a).

Plaintiff argues that Mr. Dowd's declaration (ECF No. 13-2), makes him a material witness in violation of Rule 3.7(a). Plaintiff states that Mr. Dowd will be a material witness regarding Plaintiff's allegations of fraud against Thompson Hospitality. Defendants respond by arguing that Mr. Dowd's declaration relates only to the undisputed fact that Plaintiff executed the Release. (ECF No. 33, at 2). Defendants also contend that there will be no reason for Mr. Dowd to testify at trial. (*Id.*).

Mr. Dowd's declaration relates solely to the occurrence of the EEOC mediation session and the execution of the Release. The declaration is not about the substance or scope of the mediation session or Release signed by Plaintiff and a Thompson Hospitality representative. Plaintiff has not contested the information contained in the declaration and, as such, the declaration falls within the uncontested issue exception found in Rule 3.7(a)(1). The submission of Mr. Dowd's declaration with Defendants' motion for summary judgment does not run afoul of Rule 3.7.

Moreover, it is not likely that Mr. Dowd will be a necessary witness at trial. Because all Defendants' motions to dismiss and for summary judgment will be granted, further

consideration about potential prejudice or confusion of the issues at a trial are not applicable. *Cf. Harris v. Keystone Ins. Co.*, No. CCB-13-2839, 2013 WL 6198160, at *3 (D.Md. Nov. 26, 2013) ("Having decided that [Plaintiff] cannot pursue a bad faith tort cause of action, the court determines that he cannot base a motion to disqualify counsel on that claim."). In the unlikely chance that a trial occurs, there is no showing that Mr. Dowd is likely to be a necessary witness on a contested issue. For the foregoing reasons, Plaintiff's motion to disqualify independent Defendants' counsel will be denied.

## VI.  Conclusion

For the foregoing reasons, the motion of Defendants Thompson, Jenoure, and Zaikouk to dismiss or, alternatively, for summary judgment will be granted. Defendant Kelly's motion to dismiss or, alternatively, for summary judgment will be granted. Plaintiff's motion to amend his complaint will be denied. Defendant Bowie State's motion to dismiss will be granted. Defendant Morgan State's motion to dismiss will be granted. Defendant PGCC's motion to dismiss will be granted. Plaintiff's motion to dismiss voluntarily without prejudice will be denied. Plaintiff's motion to disqualify counsel will be denied. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
